IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, | : |
| | : CRIMINAL ACTION |
| v. | : No. 88-519 |
| | : |
| ROBERT SMITH, | : |
| *Defendant/Petitioner*, | : |

MEMORANDUM

Jones, II   J.                                                                                          January 10, 2022

## I.      Introduction

Presently before the Court is Defendant Robert Smith (hereinafter "Defendant")'s Motion for Reduced Sentence pursuant to Section 404 of the First Step Act of 2018 (hereinafter "Motion"). ECF No. 181. Therein, he asks this Court to reduce his sentence for various convictions from 1989. He posits that the First Step Act, in conjunction with the sentencing package doctrine, gives this Court authority to resentence him on all counts. For the reasons stated herein, Defendant's Motion is denied.

## II.     Factual Background

Defendant was convicted on August 3, 1989, for various charges related to his involvement in an organization which sold crack cocaine and marijuana in Philadelphia during the mid-to-late 1980s.[1] He was sentenced on October 6, 1989, receiving a life sentence for

---

[1] Specifically, Defendant was convicted of one (1) count of 21 U.S.C. § 846: conspiracy to distribute cocaine base; one (1) count of 18 U.S.C. § 1962(c): RICO; one (1) count of 21 U.S.C. 848: continuing criminal enterprise; twenty-two (22) counts of 21 U.S.C. § 841(a)(1): distribution of cocaine base; two (2) counts of 21 U.S.C. § 845(a):distribution of cocaine base near school; two (2) counts of 18 U.S.C. § 1952(a)(3): traveling to facilitate drug trafficking; one (1) count of 18 U.S.C. § 924(c)(1): carrying and using a firearm in connection with drug trafficking; one (1) count of 18 U.S.C. § 922(g)(1): felon in possession of firearm; five (5) counts of 21 U.S.C. § 845(b): use of minors; two (2) counts of 18 U.S.C § 1952(B): violent crime in aid

1

Count 3—21 U.S.C. § 848[2]: continuing criminal enterprise (hereinafter "CCE")—and Count 71—18 U.S.C. § 1952(B)[3]: violent crime in aid of racketeering (hereinafter "VICAR").[4] The life sentence for CCE related to Defendant's leadership role in the drug organization, and the life sentence for VICAR was for the murder of Joel Hinnant (hereinafter "VICAR murder"). Defendant was also convicted, sentenced, and is still serving 40 years for violating 21 U.S.C. § 846: conspiracy to distribute cocaine base. In the thirty-two (32) years since Defendant's sentencing, he has completed numerous certifications and classes while incarcerated.[5]

Relevant to this case is this Court's prior ruling in Defendant's brother's case—Everton Smith.[6] Everton Smith was involved in the same drug organization as his brother. He was found guilty on many of the same counts and was also given a life sentence for CCE.[7] While Everton Smith was also convicted of two (2) counts of VICAR, these were the result of assaulting a co-defendant with a stun-gun.[8] Unlike his brother, Everton Smith was not convicted of VICAR

---

of racketeering, in connection with the use of a stun-gun in an assault; and one (1) more count of § 1952(B) for the murder of Joel Hinnant.
[2] As discussed *infra*, it is unclear what subsection of 21 U.S.C. § 848 the Defendant was sentenced under. This is relevant as it is unresolved whether Subsection (a) is a covered offense under the First Step Act, but both parties agree that Subsection (b) is a covered offense.
[3] 18 U.S.C. § 1952(B) was later renumbered as 18 U.S.C. § 1959.
[4] The Honorable Robert S. Gawthrop, III was the sentencing judge.
[5] These include: a Doctor of Divinity and his Credentials in Ministry, a certificate for becoming a Legal Assistant/Paralegal, several business classes, an Ecology class, and several computer classes.
[6] 88–CR–519–02.
[7] The same ambiguity regarding what subsection of § 848 Robert Smith was convicted under exists for Everton Smith as well.
[8] Defendant was also convicted of these two (2) counts, but he was only given a life sentence for the VICAR murder count.

murder. Everton Smith also completed various certifications and courses during his incarceration.[9]

Everton Smith filed a Motion under the First Step Act on September 10, 2020, to reduce his sentence to time served. *See* Motion to Reduce Sentence Under Section 404 of the First Step Act by Everton Smith, *United States v. Smith*, No. 88–CR–00519 (Sep. 10, 2020), ECF No. 174. This Court granted said Motion on November 18, 2020. *See* Order Granting Defendant's Motion for Reduction of Sentence Pursuant to Section 404, *United States v. Smith*, No. 88-CR-00519 (November 18, 2020), ECF No. 178.

### III. Fair Sentencing Act and the First Step Act Background

The Anti-Drug Abuse Act was signed into law on October 27, 1986. The Act set forth mandatory minimum penalties of five (5) and ten (10) years for drug offenders, depending primarily on the type and quantity of drugs involved in their offenses. Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 401, 100 Stat. 3207, 2–3; *Dorsey v. United States*, 567 U.S. 260, 266 (2012). For powder cocaine offenses, the mandatory minimums of five (5) and ten (10) years were triggered if the offense involved 500 or 5,000 grams, respectively. Anti-Drug Abuse Act of 1986, § 401. In contrast, for crack cocaine offenses, mandatory minimums were triggered at 5 and 50 grams, respectively, a 100-to-1 crack-to-powder ratio. *Id.*; *Dorsey* 567 U.S. at 266.

Over the next two (2) decades, the disparity between them was sharply criticized, at least in part, because sentences embodying the 100-to-1 ratio reflected unjustified race-based differences. *Dorsey*, 567 U.S. at 268. In 2010, Congress enacted the Fair Sentencing Act, which lessened the disparity between crack cocaine and powder cocaine by making the five (5) and ten

---

[9] These included: being a suicide watch companion, completing anger management, victim impact, positive decision making, and non-residential drug abuse courses, as well as several certificates in trade fields.

(10) year mandatory minimums for crack cocaine applicable at 28 and 280 grams, respectively. Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. The powder cocaine weights and penalties remained the same. *Compare* 21 U.S.C. §§ 841(b)(1)(A)(ii), (B)(ii) (2008); *with* Fair Sentencing Act § 2(a). This reduced the disparity from 100-to-1 to 18-to-1, but the change was not retroactive and only applied to offenses that occurred after August 3, 2010. Fair Sentencing Act § 2(a); *United States v. Willis*, 417 F. Supp. 3d 569, 573 (E.D. Pa. 2019).

In 2018, Congress passed the First Step Act, which allowed courts to retroactively apply the Fair Sentencing Acts's crack-cocaine reductions to those sentenced before August 3, 2010. First Step Act of 2018, 115 Pub. L. No. 391, § 404, 132 Stat. 5194, 5222. Section 404 of the First Step Act reads as follows:

> (a) Definition of covered offense. In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) Defendants previously sentenced. A court that imposed a sentence for a covered offense may, on motion of the Defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) Limitations. No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

§ 404. The initial inquiry is whether the movant's offense occurred before August 3, 2010. § 404(a). If so, Courts must then determine whether the sentence has already been imposed or reduced pursuant to the Fair Sentencing Act, or if a previous motion for reduction under the First

4

Step act was denied. § 404(c). Lastly, Courts must consider whether the offense is a "covered offense." § 404(a). A "covered offense" is determined by the statute of conviction. *United States v. Jackson*, 964 F.3d 197, 202 (3d Cir. 2020) ("Congress intended eligibility to turn on a defendant's statute of conviction rather than his conduct."). If all of these conditions are met, courts *may* resentence a defendant. § 404(b).

### III. Discussion

Here, Defendant was sentenced on October 6, 1989 and has not previously been resentenced or filed a motion for resentencing under the First Step Act. Defendant is still serving his two (2) life sentences for CCE and VICAR murder, and forty (40) years for 21 U.S.C. § 846: conspiracy to distribute cocaine base. Defendant argues that 21 U.S.C. § 848, *in toto*, is a covered offense under the First Step Act, and because of this, the sentencing package doctrine allows resentencing on all counts. Mot. 4–5.

In response, the Government argues that Defendant's CCE conviction is only a covered offense if he was convicted under subsection (b)—they maintain that subsection (a) of is not a covered offense. Gov't Resp., ECF No. 186, 19–23. Even if Defendant's CCE conviction is a covered offense, however, the Government claims that because VICAR murder is not a covered offense, the sentencing package doctrine does not apply, and this Court does not have authority to resentence the Defendant's VICAR murder conviction. *Id.* at 11-19. Thus, the Government asks this Court to use the concurrent sentence doctrine "to avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent." *Id.* (quoting *United States v. McKie*, 112 F.3d 626, 628 n.4 (3d Cir. 1997)). Because of this, the Court will first address the issue of whether Defendant can be resentenced for his VICAR murder conviction.

### A. 18 U.S.C. § 1952(B): VICAR Murder

Defendant was sentenced to life imprisonment under 18 U.S.C. § 1952(B) for VICAR murder. Neither § 1952(B) nor its later renumeration as 18 U.S.C. § 1959 have ever had penalties prescribed by 21 U.S.C. § 841, or any section that was amended by the Fair Sentencing Act. Accordingly, since the statute self-prescribes its penalties and has not been affected by the Fair Sentencing Act, Defendant's conviction for VICAR murder is not a covered offense and is not entitled to resentencing under the First Step Act.

Because VICAR murder is not a covered offense, Defendant asserts that this Court can use the sentencing package doctrine to resentence him on all counts. Mot. 5. Defendant claims that numerous other courts have applied the sentencing package doctrine in this context and string cites several cases to support that assertion. *Id.* For purposes of this discussion, it will be assumed, *arguendo*, that Defendant's other life sentence under 21 U.S.C. § 848 is a covered offense.

The sentencing package doctrine states:

> [W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When a conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand . . . if that appears necessary in order to ensure that the punishment still fits both crime and criminal.

*United States v. Davis*, 112 F.3d 118, 122 (3d Cir. 1997) (internal citations omitted). However, "the sentencing package doctrine should be confined to cases in which the sentences on the underlying counts were *interdependent.*" *United States v. Miller*, 594 F.3d 172, 180 (3d Cir. 2010) (citing *McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 87–88 (3d Cir. 2007); *United States v. Murray*, 144 F.3d 270, 273 n.4 (3d Cir. 1998)). "Interdependent offenses 'result in an aggregate sentence, not sentences which may be treated discretely.'" *Id.* (citing *Murray*, 144

6

F.3d at 273 n.4). "The sentencing package doctrine generally applies to sentences with interdependent, consecutive counts, and not to concurrent sentences." *McKeever*, 486 F.3d at 87–88 (citing *Murray,* 144 F.3d at 273–74 n.4; *Davis,* 112 F.3d at 123). "[C]ounts that were grouped pursuant to the Sentencing Guidelines at the original sentencing are interdependent, such that the vacation of one of the grouped counts requires a de novo sentencing on remand." *United States v. Diaz*, 639 F.3d 616, 619 (3d Cir. 2011) (internal citations omitted); *see also*, *United States v. Green*, 04-CR-00233, 2020 U.S. Dist. LEXIS 126088, at *20 (W.D. Pa. July 17, 2020) ("A defendant's entire sentence merits review under the sentencing package if the sentencing court viewed the original sentence as a package."); *but see United States v. Ciavarella*, 481 F. Supp. 3d 399, 408 (M. D. Pa. 2020) ("[G]rouping alone is not dispositive for purposes of the sentencing package doctrine."). "[W]hether a sentence is a 'package' is determined at [the] time of sentencing." *Davis*, 112 F.3d at 122 n.5.

Looking to Defendant's sentencing, it is evident that Judge Gawthrop did not view the original sentence as a package. His only intention was to sentence Defendant to the maximum amount of time possible. Judge Gawthrop stated:

> It is perhaps sad that the law cannot hurt you more than it can today. You are a bully. You bullied the community into submission and now it is time for the community to bully back, to strike back, to put you in jail until after you are dead, which is what I am just about to do. . . .
>
> . . . .
>
> It is the express intent of the Court that this defendant never get out of jail while he is still alive.

Sent. Trans. 23:6–10, ECF No. 189, 24:18–19. To achieve this, Judge Gawthrop would not have used all the counts in aggregate, but individually and independently of one another, so that any future vacation or resentencing of one count would not make the Defendant eligible for resentencing *in toto*. In fact, Judge Gawthrop guarded against such a possible scenario:

7

> It is the express intent of the Court that this defendant never get out of jail while he is still alive, and that this be uttered without any possibility whatsoever or any doubt of any kind whatsoever, should he be susceptible to parole or any conceivable device that the authorities in the future might conjure in order to let him out of jail until after he is a corpse.

*Id.* at 24: 18–24. Non-interdependence is further evidenced by the fact that the sentences were issued to run concurrently and not consecutively, since the sentencing package doctrine "generally applies to . . . consecutive counts, and not to concurrent sentences." *McKeever*, 486 F.3d at 87–88; *see* Sent. Trans. 24: 2–3 ("The life imprisonments here imposed are to run concurrently.").

Defendant does not explain how the sentencing package doctrine is applicable to his case or how his VICAR murder and 21 U.S.C. § 848 convictions are interdependent. In fact, his Motion is void of any mention of the VICAR murder conviction besides a table listing all his convictions. Mot. 3. Similarly, in his Reply, Defendant mentions his VICAR murder conviction only to correct the Government's erroneous assertion that Defendant received a mandatory life sentence, as opposed to a judge-imposed, discretionary life sentence. Reply, ECF No. 187, 2-3.[10]

Not only does Defendant fail to explain how the sentencing package doctrine is applicable to the present case, but none of the cases he cites in support of his position explain

---

[10] In his Reply, Defendant asserts that this Court has used the sentencing package doctrine to reduce VICAR offenses on previous occasions, alluding to this Court's decision regarding Everton Smith. Reply 3. However, in that case, the VICAR offenses only carried a maximum penalty of twenty (20) years, which Everton Smith had already served at the time of this Court's decision to reduce his sentence. Therefore, the Court *has not* invoked the sentencing package doctrine to reduce VICAR offenses in this context. Further still, Everton Smith's VICAR convictions were for assault with a stun gun—Defendant's VICAR convictions were for the same assault *and* a separate murder. While analogous in many respects, any comparative value between the two (2) brother's cases is extinguished by Defendant's additional murder conviction.

8

why the doctrine should apply to a VICAR murder conviction.[11] He first cites *United States v. Hill*, No. 96-CR-399, 2020 WL 891009 (D. Md. Feb. 24, 2020).  In that case, the defendant was resentenced for two (2) covered offenses: 21 U.S.C. § 841—distribution of cocaine base —and 21 U.S.C. § 846—conspiracy to distribute cocaine base. *Id.* at *1.  The court applied the sentencing package doctrine to resentence on 21 U.S.C. § 860—distribution of crack cocaine within one thousand feet of a school[12] because the covered and non-covered offenses were grouped together at sentencing and "were all related to the same underlying conduct." *Id*. at *4.  The offenses shared a common nucleus of *conduct*—distribution of crack cocaine.  The only distinguishing factor was merely the *location of the conduct*—distribution of crack cocaine versus distribution of crack cocaine within one thousand feet of a school.

Here, the distinguishing factor between Defendant's CCE and VICAR murder conviction is not the location of the conduct, *but the conduct itself*.  CCE is not a requisite activity for VICAR murder in the same way that distribution of crack cocaine is to distributing crack cocaine within one thousand feet of a school.  Without further parallels, *Hill* is limited in guiding this Court's present examination.[13]

---

[11] Defendant does not provide any explanation as to how the cases he cites are applicable to his case, and none of the cases he cites are precedential. Accordingly, the Court's analysis of the cited cases is based upon its own, independent review.

[12] Importantly, in *Hill*, the defendant raised two (2) arguments as to why he should be resentenced on his 21 U.S.C. § 860 conviction.  "The first theory is that a violation of § 860 is a 'covered offense' under the First Step Act.  The second theory is that because Count One is a 'covered offense,' Hill is also eligible for a reduction on Count Five under the sentencing package doctrine." *Hill*, 2020 WL 891009 at *4.  The court declined to opine on whether § 860 is a covered offense because it agreed that the sentencing package doctrine would apply even if it were not a covered offense. *Id.*  Therefore, this case's persuasive value is immediately lessened given that the "non-covered" offense in question may in fact be a "covered offense."

[13] Defendant also cites *United States v. Harmer*, No. 03–CR-00216, 2019 U.S. Dist. LEXIS 175775 (D. Md. Oct. 8, 2019) and *United States v. DeJesus*, No. 00-CR-00227, 2019 WL 5685090 (D. Conn. Nov. 1, 2019) to support the conclusion that this Court can resentence him.  Harmer was convicted of "possession with intent to distribute five grams or more of cocaine base

In addition to *Hill*, Defendant also cites *United States v. Clarke*, where the court reduced Clarke's crack sentence under the First Step Act and used the sentencing package doctrine to reduce a non-covered, violent offense. Order Granting Patricia Clarke's Motion for Reconsideration at 5–6, No. 92–CR-4013 (N.D. Fla. Oct. 24, 2019), ECF No. 2319. The non-covered, violent offense involved the damaging of a microwave oven and a car that led to the death of a police officer. 18 U.S.C. § 844(i) (1992); Third Superseding Indictment at 57–58, *United States v. Clarke*, No. 92-CR-4013 (N.D. Fla. Oct. 16, 1992), ECF No. 245. The court found its authority to reduce the non-covered offense because the "defendant's *crack* offenses drove the entire sentencing package." Order Granting Patricia Clarke's Motion for Reconsideration, *Clarke*, No. 92-CR-4013, ECF No. 2319 (emphasis added). The court chose to resentence on a non-covered, violent offense where the sentencing package was *driven by a covered offense*.

*Clarke*'s guidance is inapplicable to the present case because Defendant's sentence was not driven solely by crack cocaine offenses. Rather, the Pre-Sentencing Report indicates that VICAR murder (a non-covered offense) was the driving force behind Sentencing. Pre-Sentencing Report ¶ 146 ("The most serious of the offenses charged is the murder."). Furthermore, the Sentencing Transcript shows that Judge Gawthrop viewed the CCE and VICAR murder counts as two (2) separate, distinct reasons for the sentence imposed:

---

(Count Three) and possession with intent to distribute cocaine hydrochloride (Count Four)." *Harmer*, No. 03–CR-00216, ECF No. 113. DeJesus was convicted of "conspiracy to possess with intent to distribute 1000 grams or more of heroin (count twelve), and conspiracy to possess with intent to distribute 50 grams or more of cocaine base, *i.e.,* 'crack cocaine' (count thirteen)." *DeJesus*, 2019 WL 5685090, at *1. Just like in *Hill*, the underlying conduct between the non-covered and covered offenses were the same, distribution of a controlled substance. There was no separate, non-covered, violent offense. Accordingly, these cases are of little persuasive value as Defendant is asking for resentencing on a non-covered, violent offense, where the underlying conduct is distinct from any covered offense he was convicted of.

10

> The 160,000 grams of cocaine so vastly exceeds the 500 cap, if you will, in the sentencing guidelines as to call certainly for the highest of the highest variation in sentencing you. This is a crime of immense proportion. It is a sad case.
>
> Not only the chemical violence your drugs have wreaked upon people but the physical violence, the perpetrated violence that you personally visited upon others shows you to be a foul, foul human being, a vicious, violent person who, armed with weaponry, wouldn't hesitate to hurt others; but because you were always the one who was armed and they weren't, it ultimately shows you, as well, besides, to be vicious and a killer.

Sent. Tran. 22:16–23:3. With Judge Gawthrop's guidance, it is clear to the Court that Defendant's sentence was not driven by his CCE conviction in the same way that *Clarke*'s sentence was driven by her crack offenses.

Furthermore, the non-covered, violent offense that *Clarke* was concerned with—the damaging of a microwave oven and car that lead to the death of a police officer in violation of 18 U.S.C. § 844(i)—is far different from the non-covered, violent offense here. 18 U.S.C. § 844(i) was punishable by *a maximum* of ten (10) years' incarceration,[14] whereas VICAR murder was punishable by any number of years up to life imprisonment.[15] Given this disparity in possible sentences, *Clarke* provides little persuasive value for the proposition that this Court can resentence Defendant on his VICAR murder conviction.

Defendant also cites *United States v. Jones* where the defendant was convicted of violating 18 U.S.C. § 1962(c), Racketeering in Corrupt Organizations ("RICO"); 18 U.S.C. § 1962(d), RICO Conspiracy; 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846, Conspiracy to Distribute and Distribution of More Than 1000 Grams of Heroin and 50 Grams of Cocaine Base;

---

[14] 18 U.S.C. § 844(i) (1992) (emphasis added).
[15] 18 U.S.C. 1952(B) was renumbered to 18 U.S.C. § 1959 in 1988. Anti-Drug Abuse Act of 1988, Pub. L. No. 100–690, § 7053(b), 102 Stat. 4181, 4402. In 1994, 18 U.S.C. § 1959 was amended to require mandatory life sentences for murder. *Compare* 18 U.S.C. § 1959(a)(1) (1993); *with* 18 U.S.C. § 1959(a)(1) (1994). Defendant was sentenced before this amendment, when the judge had discretion to sentence for any term of years up to life. *See, e.g.*, § 1959(a)(1) (1993).

11

and 18 U.S.C. § 1959(a)(5), Conspiracy to Murder Anthony Scott. No. 99–CR-264, 2019 WL 6907304, at *1 (D. Conn. Dec. 19, 2019). Jones was given life imprisonment without the prospect of parole on multiple counts. Importantly, Jones was only given ten (10) years imprisonment on the VICAR offense, as opposed to the life sentence Defendant received here. What makes *Jones* devoid of any comparative value is that, "Mr. Jones *ha[d] already served his full ten-year term of imprisonment. . .* for conspiracy to murder Anthony Scott, . . . the Court need not address that sentence here." *Id.* at *4 (emphasis added). Therefore, the only counts remaining for resentencing consideration were the drug and corresponding RICO offenses, not the VICAR offense that would have helped guide the Court today.

Similarly, Defendant's reference to *United States v. Black* is equally unavailing. There, Black was convicted of possessing at least 200 grams but less than 300 grams of powder cocaine, in violation of 21 U.S.C. § 841; being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and distributing fifty (50) grams or more of crack cocaine, in violation of 21 U.S.C. § 841. *United States v. Black*, 388 F. Supp. 3d 682, 684 (E.D. Va. 2019). The *Black* court worked at length to remedy the fact that Black was erroneously labeled a career offender, and "[t]hat error effectively doubled Black's applicable Guidelines range, increasing it from 188 months to 235 months to 360 months to life." *Id.* at 688. Resentencing was mostly based upon correcting that erroneous labeling, and the defendant was given 210 months on each count. *Id.* at 688–91. While *Black* involved the resentencing of a non-covered offense, it did not deal with resentencing for a non-covered, *violent* offense[16] and provides little persuasive value to the Court today.

---

[16] Additionally, 18 U.S.C. §§ 922(g)(1) and 924(e) are *status offenses*—criminalizing otherwise lawful conduct due to the status of the person committing the conduct. VICAR murder is not such a crime, so the non-covered offense in *Black* is not like the non-covered offense here.

Not only does the lack of applicable caselaw lead the Court to conclude that it cannot resentence Defendant's VICAR murder charge, but this Court's authority to resentence is also limited by 18 U.S.C. § 3582(c)(1)(B). The statute reads: "the court may modify an imposed term of imprisonment to the extent otherwise *expressly* permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." § 3582(c)(1)(B) (2021) (emphasis added). "The First Step Act does not *expressly* authorize a district court to conduct a plenary resentencing of the Defendant." *United States v. Crews*, 385 F. Supp. 3d 439, 444 (W.D. Pa. 2019); *see also* First Step Act of 2018, 115 Pub. L. No. 391, § 404, 132 Stat. 5194, 5222. Thus, in the absence of express congressional directive or clear Third Circuit authority, this Court cannot escape the limits placed on it by 18 U.S.C. § 3582(c)(1)(B).

Considering all the above mentioned, this Court does not have the authority to resentence Defendant's VICAR murder conviction. First, Judge Gawthrop sought to sentence Defendant for as long as possible by giving him two (2) life sentences. Given this, the fact that Judge Gawthrop made the sentences concurrent suggests that he did not intend them to be interdependent. *See McKeever*, 486 F.3d at 87-88 ("The sentencing package doctrine generally applies to sentences with interdependent, consecutive counts, and not to concurrent sentences."). Second, the cases cited by Defendant are non-precedential and lack persuasive value due to factual dissimilarities. Despite the Court's own, independent research, the Court has failed to find any caselaw suggesting that a reduction of VICAR murder would be appropriate in the present instance. Lastly, the First Step Act does not *expressly* give this Court authority to resentence on the VICAR murder count, despite possible eligibility on the CCE conviction. Therefore, the limits of 18 U.S.C. § 3582(c)(1)(B) prevent this Court from interpreting the First Step Act to allow Defendant to be resentenced, so the Court cannot resentence him today.

## B. Discretionary Judgment

Even assuming, *arguendo*, that there was authority to resentence Defendant's VICAR murder conviction under the sentencing package doctrine, a conclusion that this Court does not find, the Court is not obligated to resentence Defendant. The First Step Act is only permissive: "A court. . . *may*. . . impose a reduced sentence. First Step Act § 404(b) (emphasis added). Accordingly, this Court would still decline to resentence the Defendant as a matter of discretion.

Judge Gawthrop's intent was unequivocal: he wanted Defendant to never be eligible for resentencing or parole, no matter what future legislative devices may make him so.[17] Judge Gawthrop even envisioned the scenario presently before this Court, and he advised to decline any reconsideration of the sentence. Judge Gawthrop heard the evidence, listened to the witnesses, saw the exhibits, and imposed a sentence he thought fit the penological goals of our justice system. Relative to him, this Court is in a supremely inferior position to second-guess his judgment and ascertain a different sentence.

It is no small matter to be sentenced to life imprisonment without parole—it is "the second most severe penalty permitted by law." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). "[L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences." *Graham v. Florida*, 560 U.S. 48, 69 (2010). Life without parole "alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration,[18] except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness

---

[17] Sent. Tran. 24: 18–24.

[18] Defendant's studies and efforts during his incarceration are commendable. It is evident that he has taken his time in incarceration seriously and worked to better himself through the numerous classes and courses of study he has completed. However, these steps, alone, are insufficient to warrant a sentence reduction.

14

of the sentence." *Id.* at 69–70.  Notwithstanding this, Judge Gawthrop sentenced Defendant to life imprisonment and guided future courts to decline any future possibility of resentencing. Accordingly, even if this Court had the authority to resentence Defendant's VICAR murder count, it would decline to do so as a matter of discretion.

### C.  21 U.S.C. § 848: CCE

Since this Court does not have the authority—or if it did, would not as a matter of discretion—to reduce the Defendant's life sentence for VICAR murder, this Court does not need to conclude under what section of 21 U.S.C. § 848 Defendant was sentenced and whether § 848(a) is a covered offense under the First Step Act.  As briefed by the parties, it is not clear whether Defendant was sentenced to life under 21 U.S.C. § 848(a) or (b).  This is relevant because whether § 848(a) is a covered offense is an unresolved legal issue.  Some courts have held that all of § 848 is covered,[19] while others say only § 848(b) is covered.[20]  Declination to resolve these issues is predicated on the concurrent sentence doctrine.

"Under the concurrent sentence doctrine, a court has discretion to avoid resolution of legal issues affecting less than all counts in an indictment if at least one will survive and sentences on all counts are concurrent."  *Parkin v. United States*, 565 F. App'x. 149, 152 (3d Cir. 2014) (internal quotations and citations omitted).  "Since the Defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility.  The practice is eminently practical and preserves judicial resources for more pressing needs."  *Id.* (internal quotations and

---

[19] *E.g.*, *United States v. Brown*, No. 08-CR–00011, 2020 WL 3106320, at *4 (W.D. Va. June 11, 2020) ("[B]ecause at least one of the penalties [included in § 848] was modified by Section 2 or 3 of the Fair Sentencing Act, this Court concludes that Defendant is eligible for resentencing under the First Step Act.").

[20] *E.g.*, *United States v. Smith*, No. 04-CR-880857, 2020 WL 3790370, at *6-13 (E.D. Mich. July 7, 2020) (holding that a CCE conviction under § 848(a) is not a covered offense).

15

citations omitted). Accordingly, this Court declines to opine about Defendant's life sentence under 21 U.S.C. § 848.

### D. Compassionate Release

In the alternative, Defendant asks for a hearing to argue compassionate release under 18 U.S.C. § 3582(c). He states that around the time he filed his motion, he had contracted COVID-19, and his health issues should be considered by this Court. However, Defendant is still in the process of requesting his medical records, and he cannot provide those before the Court as of the date of issuance of this opinion.

Before a defendant can proceed to the merits of a motion for compassionate release, they must satisfy Section 3582(c)(1)(A)'s exhaustion requirement.[21] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). To accomplish this, the First Step Act furnishes prisoners with "two direct routes to court: [either] (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion [for compassionate release], or (2) file a motion 'after the lapse of 30 days from the receipt . . . of such a request' by the warden of the prisoner's facility, 'whichever is earlier.'" *United States v. Wilson*, No. 14-CR-209-01, 2020 WL 1975082, at * 2 (E.D. Pa. Apr. 24, 2020) (quoting *United States v. Rodriguez*, No. 03-CR-271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020) (citing 18 U.S.C. § 3582(c)(1)(A))); *see Raia*, 954 F.3d at 595. Under the exhaustion requirement, the BOP is given "a chance to review a defendant's request in the first instance[, which] can result in the request being 'resolved much more quickly and economically . . . than in litigation in federal court.'" *Woodford v. Ngo.*, 548 U.S. 81, 89

---

[21] Section 3582(c)(1)(A) prohibits a defendant from moving for compassionate release, and the court from acting on that motion, until after the Defendant has satisfied the statute's exhaustion requirement. Prior to the First Step Act, a motion for compassionate release could be brought by only the director of the BOP, not the Defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017).

(2006). Moreover, it permits the BOP "to gather the Defendant's administrative and medical records, helping to produce a useful . . . record for subsequent judicial consideration." *Id*. (citation omitted).

Although courts are split on whether the failure to satisfy 18 U.S.C. § 3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, the Third Circuit has determined that an inmate may file a motion for compassionate release in a United States District Court thirty (30) days after presenting the request to the warden, regardless of whether the administrative appeal process is complete. *See United States v. Harris*, 973 F.3d 170 (3d Cir. 2020). In the present case, Defendant has failed to make any showing that he has exhausted these administrative requirements. Without such exhaustion, the Court cannot grant a hearing to consider the merits of his compassionate release claim. Accordingly, Defendant's request for a hearing on his motion for compassionate release is denied with leave to re-file.

## V.      Conclusion

For the reasons set forth herein, Defendant's Motion for a for Reduced Sentence pursuant to Section 404 of the First Step Act of 2018 is denied. Defendant's request for a hearing on his motion for compassionate release is denied with leave to re-file.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II J