IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, | CRIMINAL ACTION |
| v. | |
| ROBERT SMITH | NO.  88-519 |

HODGE, J.                                                                                             December 31, 2025

## MEMORANDUM

Defendant Robert Smith ("Defendant") was convicted for various charges related to his involvement in an organization that sold drugs in Philadelphia during the mid-to-late 1980s. As a result, in 1989, he received a life sentence for continuing criminal enterprise (CCE) and violent crime in aid of racketeering (VICAR). The life sentence for CCE related to Defendant's leadership role in the drug organization, and the life sentence for VICAR was for murder. The Bureau of Prisons (BOP) presently supervises his custody at USP Coleman in Florida.

Presently before the Court are Defendant's Motion to Reduce Sentence ("Motion") (ECF No. 193-1), four Supplements to the Motion (ECF Nos. 199, 200, 204, 206), and three Motions to Seal the Supplements (ECF Nos. 201, 205, & 207). For the following reasons, Defendant's Motion is denied, as are his Motions to Seal.

I.    BACKGROUND

   a.  Factual Background

From late 1985 to December 1988, Defendant was the overall leader of an organization that sold crack cocaine and marijuana at approximately twenty locations in North Philadelphia. (ECF No. 195 at 1.) He was responsible for obtaining cocaine, which was then cooked into crack,

1

packaged, and delivered to distribution locations. (*Id.*) Defendant used threats and acts of violence to discipline and maintain control over the workers, to prevent individuals from testifying against the organization or providing information to law enforcement, and to deter or eliminate competition from other drug dealers. (*Id.* at 1-2.)

In November 1986, Defendant shot and killed Joel Hinnant ("Hinnant"), a man who was suspected of interfering with crack distribution at one of the organization's locations. (*Id.* at 2.) During this incident, Defendant also shot and wounded a second individual. (*Id.*) Additionally, Defendant and his brother (who also helped run the organization) assaulted two of their workers for shortcomings in the payments for drug sales. (*Id.* at 1-2.)

### b. Procedural Background

In December 1988, Smith was charged in an indictment with one count of 21 U.S.C. § 846: conspiracy to distribute cocaine base; one count of 18 U.S.C. § 1962(c): RICO; one count of 21 U.S.C. 848: CCE; twenty-two counts of 21 U.S.C. § 841(a)(1): distribution of cocaine base; two counts of 21 U.S.C. § 845(a): distribution of cocaine base near school; two counts of 18 U.S.C. § 1952(a)(3): traveling to facilitate drug trafficking; one count of 18 U.S.C. § 924(c)(1): carrying and using a firearm in connection with drug trafficking; one count of 18 U.S.C. § 922(g)(1): felon in possession of firearm; five counts of 21 U.S.C. § 845(b): use of minors; two counts of 18 U.S.C § 1952(B): VICAR, in connection with the use of a stun-gun in an assault; and one more count of § 1952(B) for the murder of Hinnant. (ECF No. 191 at 1-2.) In January 1989, Defendant pled guilty to the murder of Hinnant and was sentenced in February 1989 to twenty to forty years in state prison. (ECF No. 195 at 3.)

In August 1989, a jury presided over by the Honorable Robert S. Gawthrop III found Defendant guilty of all charged offenses. (ECF No. 191 at 1-2.) In October 1989, Judge Gawthrop

2

imposed a sentence of life imprisonment on both the CCE count and the VICAR murder count, a sentence of forty years' imprisonment on the drug conspiracy count, and the mandatory consecutive sentence of sixty months on the § 924(c) count. (ECF No. 195 at 4.) The court ordered that, with the exception of the latter, all sentences were to run concurrently. (*Id.*) The Third Circuit affirmed Defendant's conviction and sentence, and Defendant subsequently filed a motion for relief under 28 U.S.C. § 2255, which the district court denied. (*Id.*)

In August 2018, Defendant began serving his life sentence in this case after being released from state custody. (*Id.* at 5.) In May 2021, Defendant filed a Motion to Reduce Sentence pursuant to Section 404 of the First Step Act of 2018 ("First Step Act") (ECF No. 181), asserting that the First Step Act, in conjunction with the sentencing package doctrine, "gives this Court authority to resentence him on all counts." (ECF No. 191 at 1.) On January 10, 2022, the Honorable C. Darnell Jones II denied Defendant's motion on the grounds that his conviction for VICAR murder was not entitled to resentencing under the First Step Act and that, because Judge Gawthrop did not view the original sentence as a package, the sentencing package doctrine could not be applied to resentence Defendant's VICAR murder conviction. (*Id.* at 6-7.) Defendant alternatively asked for a hearing to argue compassionate release under 18 U.S.C. § 3582(c), but the Court denied this request on the basis that Defendant failed to make any showing that he exhausted the statute's administrative requirements. (*Id.* at 16-17.)

On January 21, 2022, Defendant submitted a request for compassionate release to his warden, which was denied on February 2, 2022.[1] (ECF No. 193-1 at 4.) On March 10, 2022, Defendant filed the instant Motion (ECF No. 193-1). On March 28, 2022, the Government filed a

---

[1] In its Response in Opposition to Defendant's Motion, the Government agrees that because more than thirty days have passed since Defendant's request to the warden, he has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).

Response in Opposition to Defendant's Motion as well as moved to seal his medical records, which the Court granted two days later. (ECF Nos. 195 to 198.) Between April 13, 2022 and March 14, 2025, Defendant filed four Supplements to his Motion, and for each Supplement, he filed a corresponding Motion to Seal. (ECF Nos. 199 to 201 & 204 to 207.) The Government filed a Response in Opposition only to Defendant's Second Supplement and the accompanying Motion to Seal. (ECF No. 203.)

## II.     LEGAL STANDARD

In general, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, a district court may reduce a term of imprisonment if it finds, among other things, that "extraordinary and compelling reasons"—as set forth in the applicable policy statements issued by the Sentencing Commission—warrant such a reduction. *Id.*

The policy statement at U.S. Sentencing Guideline § 1B1.13, "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)," applies to all compassionate release motions. *See* U.S. Sent'g Guidelines Manual § 1B1.13(a). Pursuant to § 1B1.13, an extraordinary and compelling reason for compassionate release may be the medical circumstances of the defendant. For instance, an extraordinary and compelling reason includes when the "defendant is suffering from a serious physical or medical condition," or is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13(b)(1)(B). A defendant's medical circumstances also constitute an extraordinary and compelling reason when the "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(C). Another

4

extraordinary and compelling reason for compassionate release is if the defendant is at least 65-years-old, is experiencing a serious deterioration in physical or mental health because of aging, and has served at least ten years or 75% of his term of imprisonment, whichever is less. *Id.* § 1B1.13(b)(2).

If extraordinary and compelling reasons exist, the court then considers whether a sentence reduction is supported by the applicable traditional sentencing factors set forth in 18 U.S.C. § 3553(a), such as the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. A defendant has the burden of showing circumstances meeting the requirements for compassionate release. *United States v. Neal*, Nos. 08-628-5 and 10-685-1, 2020 U.S. Dist. LEXIS 187749, at *10 (E.D. Pa. Oct. 9, 2020).

### III. DISCUSSION

#### a. Motion to Reduce Sentence and Corresponding Supplements

In his Motion, Defendant asks this Court to grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that his age, injured lung, worsening glaucoma, and "high risk of severe illness or death if he is reinfected with COVID-19" serve as extraordinary and compelling bases for sentence reduction. (ECF No. 193-1 at 2). Defendant also argues that his release is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). (*Id.* at 9).

In his First Supplement, Defendant reiterates his age, glaucoma diagnosis, and shortness of breath from his lung injury. (ECF No. 199 at 4.) In his Second Supplement, Defendant details recent developments in the law that he argues "emphasize[] the importance of rehabilitation on a

Court's decision to reduce an inmate's sentence under 18 U.S.C. § 3582(c)(1)(A)." (ECF No. 200 at 1.) In addition to providing an overview of a proposed amendment to the Sentencing Guidelines, Defendant describes *United States v. Russo*, 643 F. Supp. 3d 325 (E.D.N.Y. 2022), which he alleges "recognize[s] that the First Step Act is an appropriate mechanism for reducing the lengthy sentences of those who have committed serious crimes but have shown extraordinary and compelling reasons for release, including rehabilitation." (ECF No. 200 at 1-2, 4.) As evidence of his rehabilitation since becoming incarcerated, Defendant states that "he has no incident reports on his record, has taken many classes to better himself while incarcerated and has been actively involved in advocacy work within the prison." (*Id.* at 3.) In opposition to the Second Supplement, the Government argues that compassionate release cannot be grounded on rehabilitation alone and that there is nothing extraordinary about Defendant's rehabilitation. (ECF No. 203 at 2-3.)

In his Third Supplement, Defendant includes certificates he earned for completing anger management and "basic cognitive skills" programs. (ECF No. 204 at 1). Lastly, in his Fourth Supplement, Defendant "highlight[s] the ongoing failure of the Bureau of Prisons to provide adequate medical care for his serious eye condition, which constitutes an additional extraordinary and compelling reason warranting compassionate release." (ECF No. 206 at 1.) Attached to the Fourth Supplement are exhibits that include grievances filed by Defendant regarding his medical care and responses from the warden and administrative remedy coordinator. (ECF Nos. 206-1 & 206-2.)

### i. COVID-19

Defendant first argues that the COVID-19 pandemic warrants release. It is well established that "generic hardships, common to federal prisoners, cannot be regarded as extraordinary, and have not furnished grounds for compassionate release." *United States v. Wilson*, No. 14-209-1,

6

2024 U.S. Dist. LEXIS 206668, at *12 (E.D. Pa. Nov. 14, 2024) (quoting *United States v. Lorenzo*, No. 19-744, 2023 U.S. Dist. LEXIS 21572, at *3 (D.N.J. Feb. 7, 2023)). While COVID-19 is no longer as severe of a threat to society as it was in 2020, the risk of contracting COVID-19 is something that is faced by all inmates generally, at USP Coleman and across the nation, and thus is an example of a common generic hardship. Accordingly, this prison condition identified by Defendant is not extraordinary and compelling and does not justify a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Next, Defendant posits that COVID-19 poses a grave threat to him specifically because he "is 65 years old and suffers from medical conditions that make him particularly medically vulnerable to" contracting COVID-19, which he already contracted once before in December 2020. (ECF No. 193-1 at 6.) Defendant explains that in May 2021, he suffered a lung injury after being stabbed by another inmate, and as a result, "continues to have fatigue and shortness of breath, negatively impacting his mobility." (*Id.*) However, Defendant has been fully vaccinated against COVID-19 since mid-2021 (ECF No. 196 at 94), and "[d]istrict [c]ourts in the Third Circuit consistently agree that an FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of the pandemic, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release." *United States v. Hannigan*, No. 19-373, 2022 U.S. Dist. LEXIS 47390, at *47-49 (E.D. Pa. Mar. 17, 2022) (collecting cases). Thus, while Defendant's concern is understandable, it is wholly speculative and, in turn, insufficient to warrant his immediate release.

### ii. Medical Conditions

Next, Defendant argues that his other health concerns present extraordinary and compelling reasons for release, namely his "moderate glaucoma that is chronic, progressive, and irreversible." (ECF No. 193-1 at 8.) Despite Defendant previously undergoing laser surgery, his glaucoma "is documented as intolerant to treatment." (*Id.*) Defendant asserts that this intolerance "will continue to substantially dim[in]ish his ability to provide self-care within the environment of a correctional facility, further impacting his mobility and potentially his mental health." (*Id.*) However, without further specificity or evidence, the Court cannot make inferences about Defendant's self-care abilities or BOP's ability to provide accommodations.

Defendant additionally argues that BOP is not providing him with proper medical care for his ocular issues, and the Government has not put forth any evidence to refute these assertions. As of March 14, 2025, Defendant claims that "he continues to experience significant delays and interruptions in receiving his prescribed medication and treatment, placing him at imminent risk of permanent vision loss." (ECF No. 206 at 1.) To illustrate, on December 5, 2024, Defendant filed a request for administrative remedy, in which he reported that (1) since August 2022, he had to file a grievance and wait approximately eight months to receive his prescribed eye drops, despite his medical records indicating his need for daily eye medication; (2) after being examined by a doctor in April 2024 and again in July 2024, he experienced escalated pressure in his eyes because he was not given medication that was prescribed in April until July, nearly four months later; and (3) it was not until after submitting numerous requests to staff that, in December 2024, he received eye drops he should have gotten in October 2024. (ECF No. 206-1 at 3-4.) As a result, Defendant requested in December 2024 to be transferred to another institution "that offers the level of chronic illness care [his] conditions requires." (*Id.* at 4.) On January 14, 2024, the warden denied

Defendant's transfer request while entirely ignoring his primary complaint about the irregular disbursement of medication. (*Id.* at 5.)

The Court finds that Defendant "is suffering from a medical condition that requires long-term or specialized medical care," and based on BOP's inconsistency in providing the necessary care to manage Defendant's glaucoma, BOP's lack of care puts Defendant "at risk of serious deterioration in health"—that is, blindness. Guidelines Manual § 1B1.13(b)(1)(C). Therefore, Defendant has presented an extraordinary and compelling reason for sentence reduction. *See United States v. Aguilera*, No. 19-1955, 2024 U.S. Dist. LEXIS 74964, at *6 (S.D. Cal. Apr. 23, 2024) (finding extraordinary and compelling reason where BOP failed to timely renew eye drops prescription for defendant who had glaucoma in his left eye); *United States v. Derentz*, 608 F. Supp. 3d 189, 195 (E.D. Pa. 2022) ("BOP's repeated delays in arranging for care to protect Derentz's vision constitute an extraordinary and compelling reason for release."); *United States v. Beck*, 425 F. Supp. 3d 573, 580-81 (M.D.N.C. 2019) (finding extraordinary and compelling reason where BOP repeatedly delayed petitioner's treatment, which made it more likely that her condition would worsen).

### iii.  18 U.S.C. § 3553(a) Factors

Defendant argues that "given his age and deterioration and vulnerability to further illness from COVID-19, the amount of his sentence that he has already served adequately reflects the seriousness of his offenses." (ECF No. 193-1 at 9.) He also cites his incident-free prison disciplinary record, completion of training programs in prison, and acceptance of responsibility as evidence that he has been rehabilitated and no longer poses a threat to the public. (*Id.* at 9-12.)

The Court finds, however, that the section 3553(a) factors do not militate in favor of Defendant's requested release. A reexamination of the nature and circumstances of Defendant's

offenses, 18 U.S.C. § 3553(a)(1), show them to be especially callous crimes. Not only did he spearhead a drug distribution operation for over a three-year period, but he assaulted a co-defendant with a stun-gun and used an actual gun to shoot and kill a suspected interloper. Additionally, to date, Defendant has only served a little over seven years of his federal sentence. Taken together, these facts lead the Court to find that Defendant must remain incarcerated in order to promote respect for the law, provide just punishment, and afford adequate deterrence. *See United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020) (affirming denial of compassionate release based on health conditions and concluding that the district court did not abuse its discretion "in assessing the seriousness of Doe's offense of conviction"); *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020) (holding that a district court does not abuse its discretion in denying compassionate release based, in part, on the amount of time remaining to be served in the sentence because "the time remaining in that sentence may . . . inform whether immediate release would be consistent with [the 3553(a) factors]"); *United States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021) ("Given the seriousness of the offenses of conviction, [the] [d]efendant's release, with less than fifty percent of his sentence served, would not reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses.").

  b. **Motions to Seal**

Defendant's Motions to Seal the Supplements to his Motion to Reduce Sentence are identical, and as such, the Court addresses them collectively. Defendant argues that the Court should use its discretion to seal his Supplements because they "contain[] the discussion of private information." (ECF No. 201 at 2; ECF No. 205 at 2; ECF No. 207 at 2.) However, he does not elaborate on what information he is referring to, much less why this information needs to be guarded from public access. Indeed, the Government argues that Defendant's request for sealing

should be denied due to him "present[ing] no reason at all for sealing, let alone a compelling interest that outweighs the public right of access." (ECF No. 203 at 5.) Because Defendant has not alleged sufficient reasons to warrant the Court to seal the Supplements, the Motions to Seal are denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's Motion to Reduce Sentence as well as his Motions to Seal the Supplements. An appropriate Order follows.

                                                **BY THE COURT:**

                                                **/s/ Kelley B. Hodge**

                                                **HODGE, KELLEY B., J.**